CASE NO. 2024-1792

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**10TALES, INC.,**

*Plaintiff-Appellant*

v.

**TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD., and BYTEDANCE INC.,**

*Defendants-Appellees*

Appeal from the United States District Court for the
Northern District of California, Case No. 5:21-cv-03868-VKD
Honorable Virginia K. DeMarchi

### DEFENDANTS-APPELLEES' CORRECTED RESPONSE BRIEF

Stephen S. Korniczky
Ericka J. Schulz
Michael J. Hopkins
James Young Hurt
Todd E. Lundell
SHEPPARD MULLIN RICHTER
& HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130
Telephone: (858) 720-8900
skorniczky@sheppardmullin.com
eschulz@sheppardmullin.com
mhopkins@sheppardmullin.com
jhurt@sheppardmullin.com
tlundell@sheppardmullin.com

Blaine H. Evanson
Alexander N. Harris
James R. Lee
GIBSON DUNN &
CRUTCHER LLP
3161 Michelson Dr.
Irvine, CA. 92612
Telephone: (949) 451-3805
bevanson@gibsondunn.com
aharris@gibsondunn.com
jrlee@gibsondunn.com

*Attorneys for Defendants-Appellees*

# PATENT CLAIM AT ISSUE

Claim 1 of U.S. Patent No. 8,856,030:

1. A system for associating user attributes with digital media asset attributes and creating a user specific composite digital media display, the system comprising:

a) a server;

b) a computer-readable storage medium operably connected;

c) wherein the computer-readable storage medium contains one or more programming instructions for performing a method of associating user attributes with digital media asset attributes and creating a user specific composite digital media display, the method comprising:

identifying a first set of digital media assets stored on the computer-readable storage medium,

creating, from the first set of digital media assets, a first composite digital media display,

presenting to the user via a display server, the first composite digital media display;

retrieving user social network information from at least one source external to the presented first composite digital media display, wherein the user social network information contains one or more user attributes;

selecting, based on the user attributes in the social network information, a second set of digital media assets, wherein the second set of digital media assets is associated with one or more user attributes found in the user social network information;

monitoring the first composite digital media display for the presence of a trigger, wherein the trigger indicates a personalization opportunity in the first set of digital media assets;

performing a rule based substitution of one or more of the digital media assets from the first set of digital media assets with one or more of the digital media assets from the second set of digital media assets to create a user specific set of digital media assets;

creating, from the user specific digital media assets, a user specific composite digital media display; and

presenting to the user via the display server, the second composite digital media display.

Appx59–60 (20:62–22:15).

## CERTIFICATE OF INTEREST

For Defendants-Appellees TikTok Inc., TikTok Pte. Ltd., Bytedance Ltd., and Bytedance Inc.:

Counsel for Defendants-Appellees TikTok Inc., TikTok Pte. Ltd., Bytedance Ltd., and Bytedance Inc. certify the following under Federal Circuit Rule 47.4:

1.  The full name of every party or amicus represented by me is:

TikTok Inc., TikTok Pte. Ltd., Bytedance Ltd., and Bytedance Inc.

2.  The name of the real party in interest (if the party names in the caption is not the real party in interest) represented by me is:

None.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Bytedance Ltd. is the parent corporation of TikTok Inc., TikTok Pte. Ltd., and Bytedance Inc.

4.  The names of all law firms and the partners or associates that appeared for the parties or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not entered an appearance in this case) are:

| Law Firm | Attorneys |
|---|---|
| Sheppard Mullin Richter & Hampton LLP | Martin R. Bader, Eric K. Gill, Zachary Alper |
| Formerly Sheppard Mullin Richter & Hampton LLP | Jason Mueller, Krysti Papadopoulos |

5.  Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

Ex Parte Reexamination of U.S. Patent No. 8,856,030, Reexamination Control No. 90/015,310, United States Patent and Trademark Office.

6.  All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases:

None.

January 2, 2025            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____
          */s/ Stephen S. Korniczky*
          STEPHEN S. KORNICZKY

          *Attorneys for Defendants-Appellees*
          TIKTOK INC., TIKTOK PTE. LTD.,
          BYTEDANCE LTD., and BYTEDANCE INC.

# TABLE OF CONTENTS

**Page**

PATENT CLAIM AT ISSUE ................................................................2

CERTIFICATE OF INTEREST .........................................................4

TABLE OF ABBREVIATIONS ........................................................11

STATEMENT OF RELATED CASES ..............................................12

INTRODUCTION ............................................................................13

COUNTER-STATEMENT OF THE ISSUES ..................................16

COUNTER-STATEMENT OF THE CASE .....................................17

SUMMARY OF THE ARGUMENT ...............................................24

ARGUMENT ...................................................................................26

    I.    Standard of Review .............................................................26

    II.    The Claim Is Directed to the Abstract Idea of Personalizing Content ....................................................................................27

        A.    The Claim Is Directed to Personalizing Content. .....................28

        B.    The Claim Does Not Improve Technology.............................35

        C.    10Tales Cannot Rewrite the Claim to Escape This Court's Binding Precedent Holding Materially Indistinguishable Claims Abstract. ...........................................37

    III.    The Claim Has No Inventive Concept, Just the Instruction to Implement the Abstract Idea on a Computer ......................................45

        A.    The Claim Recites Only Conventional Computer Processing, with No Inventive Elements. .................................46

        B.    10Tales' Reading of the Claim Fails. ......................................50

CONCLUSION ................................................................................58

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Adaptive Streaming Inc. v. Netflix, Inc.*
  836 F. App'x 900 (Fed. Cir. 2020) ....................................................48

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*
  838 F.3d 1266 (Fed. Cir. 2016) ..................................... 12, 29, 30, 31, 34, 35, 42

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*
  573 U.S. 208 (2014).................................................................passim

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*
  827 F.3d 1341 (Fed. Cir. 2016) .................................................55, 56

*In re Bd. of Trustees of Leland Stanford Junior Univ.*
  991 F.3d 1245 (Fed. Cir. 2021) ..........................................................47

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*
  778 F. App'x 882 (Fed. Cir. 2019) .......................... 12, 29, 32, 33, 36, 42, 44, 47

*Broadband iTV, Inc. v. Amazon.com, Inc.*
  113 F.4th 1359 (Fed. Cir. 2024) ......................................... 12, 25, 29, 42, 43, 44

*BSG Tech LLC v. BuySeasons, Inc.*
  899 F.3d 1281 (Fed. Cir. 2018) ...................................27, 28, 35, 36, 45

*CardioNet, LLC v. InfoBionic, Inc.*
  955 F.3d 1358 (Fed. Cir. 2020) ....................................................27

*Cellspin Soft, Inc. v. Fitbit, Inc.*
  927 F.3d 1306 (Fed. Cir. 2019) ......................................................53

*ChargePoint, Inc. v. SemaConnect, Inc.*
  920 F.3d 759 (Fed. Cir. 2019) ..............................................27, 39, 41, 45, 54

*Cisco Sys., Inc. v. Uniloc 2017 LLC*
  813 F. App'x 495 (Fed. Cir. 2020) ....................................................53

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................45

*Customedia Techs., LLC v. Dish Network Corp.*
  951 F.3d 1359 (Fed. Cir. 2020) ............................................... 12, 29, 35

*De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*
  216 F.3d 1027 (Fed. Cir. 2000) ................................................. 26

*Diamond v. Diehr*
  450 U.S. 175 (1981) ................................................................. 49

*Dropbox, Inc. v. Synchronoss Techs., Inc.*
  815 F. App'x 529 (Fed. Cir. 2020) ........................................ 45, 53

*Elec. Power Grp., LLC v. Alstom S.A.*
  830 F.3d 1350 (Fed. Cir. 2016) ................................................. 42

*Enfish, LLC v. Microsoft Corp.*
  822 F.3d 1327 (Fed. Cir. 2016) ................................................. 27

*Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*
  918 F.3d 928 (Fed. Cir. 2019) ......................................... 37, 51, 52

*Free Stream Media Corp. v. Alphonso Inc.*
  996 F.3d 1355 (Fed. Cir. 2021) .................... 12, 18, 25, 29, 33, 39, 42, 43, 46

*Golden Bridge Tech., Inc. v. Nokia, Inc.*
  527 F.3d 1318 (Fed. Cir. 2008) ................................................. 26

*In re Google Tech. Holdings LLC*
  980 F.3d 858 (Fed. Cir. 2020) ................................................. 26

*Intell. Ventures I LLC v. Capital One Bank (USA)*
  792 F.3d 1363 (Fed. Cir. 2015) .................... 12, 28, 29, 30, 32, 33, 36, 42, 56

*Intell. Ventures I LLC v. Symantec Corp.*
  838 F.3d 1307 (Fed. Cir. 2016) ............................................ 27, 56

*Intell. Ventures I v. Capital One Fin. Corp.*
  850 F.3d 1332 (Fed. Cir. 2017) ................................................. 46

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*
  566 U.S. 66 (2012) ................................................................. 50

*Miller Mendel, Inc. v. City of Anna, Texas*
107 F.4th 1345 (Fed. Cir. 2024) ........................................................43

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*
811 F.3d 1314 (Fed. Cir. 2016) ............................................18, 37, 46

*MyMail, Ltd. v. ooVoo, LLC*
Nos. 2020-1825, 2020-1826, 2021 WL 3671364 (Fed. Cir. Aug. 19,
2021) ........................................................................................................42

*O'Reilly v. Morse*
56 U.S. 62 (1853) .........................................................................44, 50

*PersonalWeb Techs. LLC v. Google LLC*
8 F.4th 1310 (Fed. Cir. 2021) ......................................................25, 26

*RecogniCorp LLC v. Nintendo Co.*
855 F.3d 1322 (Fed. Cir. 2017) ..........................................................45

*SAP Am., Inc. v. InvestPic, LLC*
898 F.3d 1161 (Fed. Cir. 2018) ....................................26, 48, 49, 51

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*
873 F.3d 905 (Fed. Cir. 2017) .....................................................47, 51

*Simio, LLC v. FlexSim Software Prods., Inc.*
983 F.3d 1353 (Fed. Cir. 2020) ..........................................................25

*Synopsys, Inc. v. Mentor Graphics Corp.*
839 F.3d 1138 (Fed. Cir. 2016) ....................................45, 48, 50, 53

*In re TLI Commc'ns LLC Patent Litig.*
823 F.3d 607 (Fed. Cir. 2016) ............................................27, 28, 40

*Trinity Info Media, LLC v. Covalent, Inc.*
72 F.4th 1355 (Fed. Cir. 2023) ....................................................42, 43

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*
874 F.3d 1329 (Fed. Cir. 2017) ..........................................................44

*Weisner v. Google LLC*
51 F.4th 1073 (Fed. Cir. 2022) ....................................................55, 57

**<u>Statutes</u>**

35 U.S.C. § 101 .......................................................................................passim

**<u>Other Authorities</u>**

Federal Circuit Rule 47.5(a) ...................................................................11

Federal Rule of Civil Procedure 12(b)(6) ...............................................26

Federal Rule of Civil Procedure 12(c) ...............................................21, 53

## TABLE OF ABBREVIATIONS

| '030 patent | U.S. Patent No. 8,856,030 |
|---|---|
| TikTok | Defendants-Appellees TikTok Inc., TikTok Pte. Ltd., Bytedance Ltd., and Bytedance Inc. |
| 10Tales | Plaintiff-Appellant 10Tales, Inc. |

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), TikTok provides the following related case disclosure:

1. There has been no previous appeal in this case.

2. The '030 patent is currently the subject of an *ex parte* reexamination in the United States Patent and Trademark Office, proceeding as Reexamination Control No. 90/015,310.

# INTRODUCTION

Plaintiff-Appellant 10Tales, Inc. attempts to monopolize the abstract and ubiquitous practice of presenting personalized content to a user based on information about the user, without providing a specific process to achieve that aspiration. But as this Court has held repeatedly, patents directed to this sort of subject matter are ineligible under 35 U.S.C. § 101. *See, e.g.*, *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1371 (Fed. Cir. 2024); *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361–62 (Fed. Cir. 2021); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362–63 (Fed. Cir. 2020); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882 (Fed. Cir. 2019); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269–72 (Fed. Cir. 2016); *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015). The district court correctly recognized that 10Tales' materially indistinguishable claim fares no better, and this Court should affirm that decision.

Claim 1 of the '030 patent merely describes a conceptual "system" consisting of "one or more programming instructions" for: (1) presenting an initial set of digital media assets to a user, (2) retrieving user social network information and attributes, (3) selecting a second set of assets based on such information and attributes, and (4) substituting one or more of the initial set of assets for the second set once some kind of "personalization opportunity" arises. The patent does not identify any new

technology, specify the programming instructions used in the system, describe the kind of information collected from users or the means of collecting it, differentiate between the digital assets presented to users, or otherwise explain how the system operates in practice.  Instead, the claim recounts the commonplace business practice and conventional computer components that essentially all internet-based companies have used since the early 2000s.  But for the claim's mention of "digital media," one might assume that this patent was directed to a newspaper selecting advertisements based on the demographics of its readers, a political organization sending individualized mailers to likeminded individuals, or the practices that any number of businesses use to personalize the products or services that they provide to their clients (e.g., back-to-school sales).

10Tales has little to say against the district court's straightforward application of the two-step framework described in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), and this Court's well-established "targeted advertising" precedent. 10Tales points out that the business practice it claims is very *useful*, and notes in general terms some novel ways one *might* practice the claim (for instance, by using new psychological insights or by changing existing media to make it better targeted to the user).  *See* Br. 4–5.  But the problem, as the district court recognized, is that none of these features appears in the claim—and 10Tales has abandoned the alleged "improvements" that 10Tales said claim 1 advanced throughout the district court

14

proceedings. 10Tales also notes that the Patent Office found the claims distinct from two prior art references. But that was based on an incorrect, overly narrow claim construction that 10Tales abandoned in the district court and doesn't mention on appeal. And regardless, subject matter eligibility is different from novelty. A new abstract idea (or an old one applied in a new technological context) is still abstract. Nor is 10Tales right that the Patent Office has blessed even the claim's novelty; omitted from its brief is the fact that the Patent Office has since initiated *ex parte* reexamination of the asserted claim.

The district court's thorough decision correctly granted TikTok judgment on the pleadings because the asserted patent is plainly ineligible under 35 U.S.C. § 101. This Court should affirm.

## <u>COUNTER-STATEMENT OF THE ISSUES</u>

1.     Whether claim 1 is directed to the abstract idea of presenting personalized content to a user based on information about the user, rather than to any improvement in technology.

2.     Whether claim 1 lacks an inventive concept beyond the abstract idea of presenting personalized content to a user based on information about the user.

## COUNTER-STATEMENT OF THE CASE

On April 7, 2004, David Russek filed the '030 patent application, entitled "Method, System and Software for Associating Attributes Within Digital Media Presentations." Appx23. As 10Tales explains, "[a]t the time of the '030 patent, the state of the art included systems for delivering digital media content, and even systems for providing targeted advertisements to users." Br. 5. 10Tales also concedes that the generic and "conventional … technology" described in the patent—i.e., computers, servers, and databases—were widely used to provide personalized digital media content to users. *Id.*; Appx23–60. The '030 patent never describes a need to improve the computers, servers, or database technology described therein. Appx23–60. Instead, it merely explores the concept of retrieving social network information to personalize digital content for users, and it does so without explaining how the conceptual system retrieves such information or otherwise matches content to users. *Id.*

The patent issued with two claims. Claim 1—which describes a broad and conceptual system for presenting personalized content to a user based on information about the user—is the only claim asserted here.

10Tales filed this action in the Western District of Texas, alleging TikTok's video application and video-recommendation system infringed claim 1 of the '030

patent.  Appx86.  The district court granted TikTok's motion and transferred the case to the Northern District of California.

TikTok then moved to dismiss the operative complaint, explaining that claim 1 is ineligible under § 101 because it covers the abstract idea of "presenting customized media content based on retrieved user social network information containing user attributes" and does not recite an inventive concept.  Appx418–433. During briefing and oral argument, 10Tales indicated that it would seek narrowing claim constructions that would reveal alleged improvements in the claim and otherwise make claim 1 patent eligible.  *See* Appx442 ("10Tales' First Amended Complaint alleges facts that show these technological improvements and solutions described and claimed by the '030 patent were neither conventional nor generic 18 years ago (in 2003), and they show that conventional systems were improved by the claimed method of analyzing how a user interacts with others in an online social network to create user-specific digital media content."); *see also* Appx445, Appx451–65.  For example, 10Tales told the district court at oral argument that through claim construction, claim 1 would be narrowed to an "improved system that analyzes how the user interacts with other users in an online social network" and uses a "rule-based algorithm" to create a "user-specific digital media display." Appx574–79.

After briefing and argument, the district court determined that the '030 patent "bears relevant similarities" to the patent in *Free Stream Media*, which this Court held ineligible for doing "nothing more than implement a computer to achieve the abstract idea of providing targeted advertising" to a user. Appx651. Nevertheless, at 10Tales' insistence, the court delayed ruling on eligibility until after claim construction to determine "the basic character of the subject matter of the claimed invention" and whether the patent "introduces technological improvements over the state of the art that were not conventional or generic at the time the patent issued." Appx651–52.

The parties then presented competing claim constructions to the magistrate judge. Curiously, 10Tales never made good on its promise to ask the magistrate judge to construct claim 1 as making "improvements" to prior art. Instead, 10Tales opted to abandon such constructions altogether. As a result, it is unsurprising that the magistrate judge's subsequent construction order effectively foreclosed three of 10Tales' arguments that the claim is an eligible technological improvement with an "inventive concept."

*First*, in its opposition to the motion to dismiss, 10Tales leaned heavily on claim 1's general process of "retrieving user social network information from at least one source external to the first presented composite digital media display." According to 10Tales, this language describes a novel process (i.e., a process not

19

found in prior art) of "analyzing" a user's interactions with others in an "online social network" and then extracting user information based on those interactions. Appx442, Appx445, Appx459. But 10Tales abandoned that argument during claim construction. Appx674–76. Despite its initial promises to do so, 10Tales never asked the magistrate judge to construe "retrieving" information as "analyzing" information. Appx575–79, Appx674–76. And 10Tales abandoned this argument for good reason—the claim does not mention "analyzing" at all. As a result, the judge's order construes the "retrieving" language as it is most naturally read: a description that "addresses the *kind* of information being retrieved" (i.e., user social network information), not a description of *how* such information is retrieved or *whether* such information is analyzed. Appx2927–28.

The court further construed "user social network information" as any "information derived from a user's interactions in an online community" and obtained from a source "other than the presented first composite digital display." Appx2926–28. Because the claim does not define how such information is derived, this means that "user social network information" could refer to the process of asking a user to identify their online preferences and interests, the blogs to which they subscribe, or their friends/followers, for example.

*Second*, 10Tales argued that the patent's reference to "a rule based substitution of one or more of the digital media assets from the first set" invokes a novel

algorithm that improved prior art. *See* Appx101, Appx454–55, Appx460. But 10Tales abandoned this argument during claim construction as well. Appx678-80, Appx3242, Appx3296–97. It is thus unsurprising that the magistrate judge concluded that "the term 'rule based' refers to a substitution that happens by application of a rule, rather than on the basis of some discretionary or subjective determination." Appx2915–19, Appx2930–31. In other words, it is an instruction to use rules—something all computer programs do—not an explanation of *what* rules to use.

*Third*, at various stages of the litigation, 10Tales has asserted that claim 1 generally improves prior art by "presenting personalized digital media to a user" in a more effective and "impactful" way. Appx564–65; Appx660, Appx661, Appx663, Appx679; Appx3022–23, Appx3033–34. But while the specification describes the benefits of using demographic and psychological information to personalize content to individual users, claim 1 does not mention the "impact" of the technology. *See* Appx59–60; Appx904. Nor did 10Tales ever request an "impactful" construction. Appx672–74, Appx678–80. For this reason, the district court's claim construction order explains that the patent simply describes "the *typical* interaction between a server and a client in a *conventional* client-server model"—a business practice the court noted "was well-established at the time of the claimed invention." Appx2923 (emphasis added); *see also* Appx2915–19, Appx2931 (10Tales provided no

"impactful" construction for "creating" or "the second composite digital media display" limitations).

Following claim construction, TikTok filed its Rule 12(c) motion for judgment on the pleadings, arguing that claim 1 is ineligible under Section 101. Appx2933–61.  In response, 10Tales again argued that the '030 patent advanced prior art by "analyzing how [a] user interacts with other users in an online social network," "us[ing] a rule based algorithm," and "provid[ing] the highest level of impact."  Appx3021, Appx3028, Appx3034, Appx3041 (analyzing); Appx3022, Appx3028, Appx3034, Appx3041 (algorithm); Appx3022, Appx3023, Appx3033, Appx3034, Appx3039 (impactful).

The district court rejected 10Tales' arguments.  First, the court held 10Tales' argument relied on novel claim constructions that 10Tales had never sought, and therefore had forfeited.  Appx10–11.  The court further found that the "specification is likewise silent regarding the how the system 'learns' or 'analyzes,' as it provides only conceptual diagrams[,] … nor is any such algorithm described in the specification."  *Id.*  The court rejected 10Tales' remaining arguments, concluding that the "system of claim 1 of the '030 patent recites generic and conventional computer components, with programming instructions for performing a method with purely functional steps."  Appx11.  As a result, the court granted TikTok's Rule 12(c) motion, finding claim 1 patent ineligible under Section 101.  Appx20.  10Tales

appealed that Section 101 decision to this Court, but not any of the district court's claim construction rulings.

## SUMMARY OF THE ARGUMENT

Claim 1 fails both prongs of the *Alice* framework and is therefore patent ineligible under 35 U.S.C. § 101.

**I.**    "[C]laim 1 is limited to an abstract idea: presenting personalized content to a user based on information about the user." Appx7 (emphasis removed). The claim describes an abstract system consisting of conventional computer components implementing the longstanding practice of personalizing content for users of digital media. Br. 5 (conceding that "[a]t the time of the '030 patent, the state of the art included systems for delivering digital media content, and even systems for providing targeted advertisements to users"); Appx2923 (construing the claim as describing "the typical interaction between a server and a client in a conventional client-server model"—a business practice it noted "was well-established at the time of the claimed invention").

This Court has repeatedly held that materially indistinguishable patent claims were directed to the abstract idea of personalizing content, and this Court should do the same here. After all, claim 1 does nothing more than break down this abstract idea into its elementary conceptual subcomponents implemented by generic "programming instructions"—i.e., retrieving user information, identifying potentially relevant content based on that information, substituting out content for different content, and presenting that different content to users. While claim 1 takes

place on a computer, it does not recite any technological improvement of the claimed conventional computer components or "system"—i.e., a server and memory.  For all these reasons, claim 1 is directed to the abstract idea of personalizing content under *Alice* step one.

II.    There is no inventive concept in the asserted claim.  Neither the claim's conventional components nor its generic functions do anything more than implement the abstract idea of presenting personalized content to a user based on information about the user.  10Tales' reliance on extraneous evidence and inapposite caselaw— and its attempts to misconstrue the record—are unpersuasive, and many of its arguments are forfeited in any event.  Because claim 1 omits any specific functions or unconventional elements for implementing or improving the abstract idea of personalizing digital media content, claim 1 fails to provide an inventive concept under *Alice* step two.

# **ARGUMENT**

## I.    **Standard of Review**

Section 101 provides that "any new and useful process, machine, manufacture, or composition of matter" is patentable.  35 U.S.C. § 101.  Courts follow the Alice two-step framework for evaluating eligibility under § 101.  *Free Stream Media*, 996 F.3d at 1361; see also *Broadband iTV*, 113 F.4th at 1367.

At *Alice* step one, the court asks whether the claims are directed to an ineligible "concept," such as an "abstract idea." *Alice*, 573 U.S. at 217–18.  If so, the court must "determine [at *Alice* step two] whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* at 217 (internal quotations removed).  This is "a search for an inventive concept" that "amounts to significantly more than a patent upon the [abstract idea] itself." *Id.* at 218 (internal citations removed).

This Court reviews a "district court's ultimate conclusion on patent eligibility de novo." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020) (citation omitted).  Although patent eligibility "may involve underlying questions of fact," "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (citation omitted).  Thus, "[l]ike other legal questions based on underlying facts, this question may be, and frequently

has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). This Court has also upheld an order granting judgment on the pleadings on the basis of patent ineligibility after claim construction has occurred. *See*, *e.g.*, *PersonalWeb*, 8 F.4th at 1313–14, 1319.

This Court reviews forfeiture determinations for abuse of discretion. *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1031 (Fed. Cir. 2000). If it finds no abuse of discretion, then this Court's "precedent generally counsels against entertaining arguments not presented to the district court." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) (citing *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997)). "[F]orfeiture is the failure to make the timely assertion of a right." *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020). And this Court has "regularly stated and applied the important principle" that a forfeited argument "will not be considered on appeal in the absence of exceptional circumstances." *Id.* at 863.

## II. The Claim Is Directed to the Abstract Idea of Personalizing Content

"[C]laim 1 is limited to an abstract idea: presenting personalized content to a user based on information about the user." Appx7 (emphasis removed). A

straightforward application of this Court's precedents shows that this claim fails *Alice* step one. The district court correctly rejected 10Tales' attempts to rewrite the claims and evade this Court's established precedent.

## A.    The Claim Is Directed to Personalizing Content.

In determining whether Claim 1 is "directed to" an abstract idea, this Court considers the claim's "character as a whole." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (citation omitted). "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). Claims that are directed to fundamental or longstanding human practices will often fail *Alice* step one. *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1370–71 (Fed. Cir. 2020); *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313–14 (Fed. Cir. 2016). And merely "recit[ing] concrete, tangible components" that are "more specific than a generic computer" will not be enough to "escape[] the reach" of *Alice* step one. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016); *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018).

The plain language of claim 1 recites a conceptual "system" consisting of "one or more programming instructions" for: (1) presenting an initial set of digital media assets to a user, (2) retrieving user social network information and attributes, (3)

selecting a second set of assets based on such information and attributes, and (4) substituting one or more of the initial set of assets for the second set once some kind of "personalization opportunity" arises.

Claim 1 fails to specify the programming instructions used in the system, the means for creating and presenting the composite from the set of digital assets, the means for retrieving user social network information, any new or specific rules or means for associating the user attributes to the digital assets for presenting to users, or any of the ways in which the system might operate in practice. Claim 1 recites the *idea* of having such a conceptual system. But that *idea* is just a commonplace business practice that advertisers have always used, and that has been long-ago adopted by digital advertisers in internet-based advertising: using user information to personalize digital media content. *See Capital One*, 792 F.3d at 1370 (reviewing a 1998 patent describing "tailoring a portion of the website's logo throughout the day").

Claim 1 likewise fails to identify any new technology. Instead, it uses generic and conventional equipment—i.e., a server and computer storage—to achieve the longstanding and fundamental idea of personalizing content. *See TLI*, 823 F.3d at 611 (holding that while concrete, tangible components were claimed, the components merely provided a generic environment to carry out an abstract idea); *BSG Tech*, 899 F.3d at 1286.

This Court has routinely recognized that "personalized" and "targeted content delivery systems" are "abstract idea[s]" under *Alice* step one. *Bridge & Post*, 778 F. App'x at 887–89 ("as a whole, the claim is directed to [the abstract idea of using] persistent identifiers to implement targeted marketing … [which is] a form of 'tailoring information based on [provided] data'"); *see also Broadband iTV*, 113 F.4th at 1371 ("the '825 patent is directed to the abstract idea of collecting and using viewing history data to recommend categories of video content"); *Free Stream Media*, 996 F.3d at 1361–65 (a claim for "the rendering of targeted data to a user … based on a relevancy factor" was directed to an abstract idea, much like "similar claims" directed to "the abstract idea of 'targeted advertising'"); *Customedia*, 951 F.3d at 1362–63 ("the claims at issue here are directed to the abstract idea of using a computer to deliver targeted advertising to a user"); *Affinity Labs*, 838 F.3d at 1271 ("Like the basic concept of tailoring content to a user, … the basic concept of customizing a user interface is an abstract idea."); *Capital One*, 792 F.3d at 1369 ("customizing web page content as a function of navigation history and information known about the user" "is an abstract idea").  Because claim 1 is also directed at a personalized content system, this Court's inquiry under *Alice* step one requires little more than the application of numerous on-point cases to materially indistinguishable facts.

This Court's decision in *Capital One* is particularly instructive. 792 F.3d 1363. Like claim 1 in this case, the patent claim at issue in *Capital One* concerned a "system" for "tailor[ing]" digital content to users through an "interactive interface" that matched content to users based on each "user's personal characteristics." *Id.* at 1369. At *Alice* step one, this Court held that the patent's system of digital "tailoring is a fundamental … practice long prevalent in our system." *Id.* (cleaned up). In reaching that conclusion, this Court analogized the patent to a newspaper whose "inserts" are "tailored based on information known about the customer—for example, a newspaper might advertise based on the customer's location." *Id.* Of course, "[p]roviding this minimal tailoring—e.g., providing different newspaper inserts based upon the location of the individual—is an abstract idea." *Id.*

The same is true for 10Tales' patent, which does the same thing, just in the digital world. *Id.* Where a newspaper may substitute a coupon insert depending on the neighborhood's demographic to which is it is being delivered, claim 1 may use a user's social network (e.g., a user's digital neighborhood) to substitute digital media content in an advertisement.

Claim 1 is also analogous to the patent deemed ineligible in *Affinity Labs*, which—among other things—described "a customized interface such as a radio dial, a playlist, or targeted advertising based on demographic information provided by the user." 838 F.3d at 1271. To accomplish this abstract goal, the patent recites a

nonspecific "system" consisting of a "collection of instructions" to select and present "a library of content" for digital users in "a customized user interface." *Id.* at 1268. At *Alice* step one, this Court concluded that while the patent "describe[d] the function" of customizing digital content—i.e., "initiate presentation of a graphical user interface," "retriev[e] the portion" of relevant content, and "deliver[]" the content to users—the patent did "not disclose any particular mechanism" for doing so. *Id.* at 1268–69. "At that level of generality," this Court held, "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* Like the patent at issue in *Affinity Labs*, 10Tales' patent identifies a nonspecific "system" of "one or more programming instructions" to "present[]" a composite, "retriev[e]" user information, "associat[e]" digital assets with user information, and "present[]" a new set of digital assets. Both patents contain similar descriptions for "retrieving" and "displaying" customized content—i.e., neither discloses any *particular mechanism* to personalize or display the content. Because neither explain how the system's algorithms work, they both fail *Alice* step one.

10Tales argues that claim 1, unlike all the patents in similar content-personalization cases, is unique because it "actually customizes content for a user during streaming." Br. 33. But that argument is both misleading and misguided. It is misleading because 10Tales suggests that its patent somehow modifies content in

real-time to comport with a user's preferences. For example, 10Tales' brief gives the false impression that claim 1 might, in real time, remove clowns from circus advertisements directed at users with coulrophobia and replace them with (the much more innocuous) images of innocuous trapeze artists instead. *See* Br. 5, 26. But 10Tales did not invent any such thing; no such customization is described in the asserted claim. Instead, the claim would cover personalization as pedestrian as substituting a website's generic banner advertisement with a targeted one. *See Bridge & Post*, 778 F. App'x at 887; *Capital One*, 792 F.3d at 1369.

10Tales' argument is also misguided because what claim 1 describes is not unique. Claim 1 merely recites the process of presenting one set of assets to users and then substituting one or more of those assets out for a potentially more personalized set of assets. Appx60. During claim construction, 10Tales conceded that claim 1's practice of "substituting" assets was found in prior art. Appx3241, Appx3250. And even now, 10Tales acknowledges that "[a]t the time of the '030 patent, the state of the art included systems for delivering digital media content, and even systems for providing targeted advertisements to users." Br. 5. So claim 1 does not "customize" content, at least in the way that 10Tales suggests it does. Instead, claim 1 recites a longstanding and abstract business practice.

Regardless, even if claim 1 does "customize" content, this Court's precedents confirm that such customization would not survive *Alice* step one. After all, the

patents in other content-personalization cases certainly "customized" content with the same—if not more—specificity than does claim 1 of the '030 patent. For instance, the patent in *Capital One* called out specific methods of customization—such as the website's logo, which would appear as a rising sun if the user accessed the site in the morning or a moon if the user accessed the site at night. *Capital One*, 792 F.3d at 1369. But even then, the Court held that "customizing web page content as a function of navigation history and information known about the user" "is an abstract idea." *Id.* Customizing content based on a user's "social network information" is no less abstract than customizing content based on the user's "navigation history."

10Tales also argues that "prior cases" do not govern this dispute because this Court's *Alice* step one inquiry proceeds on "a case-by-case basis." Br. 33–34. But this is just hand-waving. 10Tales cannot distinguish these cases on the facts. This Court's Section 101 decisions routinely rely on analogies to other cases in determining whether a particular claim is directed to an abstract idea. For example, in *Bridge & Post*, this Court noted that digital targeted advertising was merely a new form of a "'fundamental practice' that dates back to newspaper advertisements." 778 F. App'x at 887. And in *Free Stream Media*, this Court held that "the rendering of targeted data to a user … based on a relevancy factor" was analogous to "similar claims" directed to "the abstract idea of 'targeted advertising.'" 996 F.3d at 1361–

65.  10Tales objects to the routine practice of likening the present case to past cases that have considered the same legal standard applied to materially indistinguishable facts—i.e., doing law.

### B.    The Claim Does Not Improve Technology.

When deciding whether "a computer-implemented invention" is abstract under *Alice* step one, "it is often helpful to ask whether the claims are directed to 'an improvement in the functioning of a computer,' or merely 'adding conventional computer components to well-known business practices.'"  *Affinity Labs*, 838 F.3d at 1270 (quoting *Enfish*, 822 F.3d at 1338).  In *Affinity Labs*, for example, the Court determined that the claims at issue in that case did not claim an improvement to computer technology because they merely "describe[d] a desired function or outcome"—customizing a user interface based on information known about the user—"without providing any limiting detail that confines the claim to a particular solution to an identified problem."  838 F.3d at 1269.

Like the patent claims in *Affinity Labs*, the patent claim in this case fails to describe a sufficiently concrete (or even technological) *problem*, much less a sufficiently detailed *solution* to that problem.

Start with the problem identified by 10Tales' patent:  delivering particularly relevant content to users.  That is, at most, a *non*technical issue—newspapers, advertisers, salespersons, business owners, and many others have confronted the

same problem for centuries. Now consider the patent's solution to that problem: delivering personalized digital media assets to users. Because claim 1 does not describe the particular algorithms or processes by which digital assets are selected and presented to users, claim 1's proposed "solution" does little more than recite the longstanding business practice of personalizing content for customers. Such a circular and abstract description fails to provide "any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs*, 838 F.3d at 1269.

This is especially true given that, by 10Tales' own telling, "the state of the art included systems for delivering digital media content, and even systems for providing targeted advertisements to users" at the time of the '030 patent. Br. 5. In other words, 10Tales concedes that the generic and "conventional … technology" described in claim 1—i.e., a server and memory—was widely used to provide such personalized content. *Id.* Although claim 1 describes the general process of using conventional technology to select and present personalized content to users based on their social network information, "claims are not saved from abstraction merely because they recite components more specific than a generic computer." *BSG Tech*, 899 F.3d at 1286. As a result, claim 1 fails to recite any specific "improvement[s] to computer functionality" as well. *Customedia*, 951 F.3d at 1365.

36

It is not enough for purposes of *Alice* step one "to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool" or to "improv[e] a user's experience while using a computer application"; instead, a patent must claim "a physical-realm improvement to computers as tools" rather than some aspirational improvement described "in wholly abstract" terms. *Id.* at 1364–65. Because the asserted claim here is, at most, an improvement in the abstract idea of personalizing content rather than a "physical-realm" improvement to concrete technology, claim 1 is abstract. The general concept of retrieving information from an allegedly "new" source—e.g., information about a user's interaction in an online community—does not improve technology. *BSG Tech*, 899 F.3d at 1285–86; *Capital One*, 792 F.3d at 1369 (customizing based on navigation history); *Bridge & Post*, 778 F. App'x at 885, 889 (tailoring based on "current and historical information about both the user and device"). It merely claims an abstract implementation of an abstract idea.

### C.    10Tales Cannot Rewrite the Claim to Escape This Court's Binding Precedent Holding Materially Indistinguishable Claims Abstract.

10Tales' remaining attempts to defend its patent fail to overcome this Court's precedent and the plain language of the claim. 10Tales failed to argue for the necessary narrowed constructions in district court, and it appears to have abandoned the alleged "improvements" that it said claim 1 advanced below.

*1. Rewriting the Claim*.  10Tales again tries to rewrite claim 1 by breaking its abstract idea into more manageable subparts, hyper-fixating on the claim's references to "retrieving user social network information" and "performing a rule based substitution" of assets.  But for several reasons, this argument finds no more traction now than it did before the district court.

*First*, by failing to ask the district court to construe these subparts in the way that 10Tales interprets them now, 10Tales at least forfeited its argument—that by "mak[ing] use of user social network information" and "performing a rule based substitution," claim 1 personalizes content to "a new and useful end."  Br. 30; *Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*, 918 F.3d 928, 933 & n.1 (Fed. Cir. 2019).  But because 10Tales successfully urged the district court to broadly construe both phrases—presumably to make its infringement case easier—10Tales went a step further and affirmatively invited the district court to reach the holdings it now asks this Court to reverse.  *See* Appx677–81.

10Tales asked the district court to construe claim 1's "retrieval" element as "simply" reciting a general practice of obtaining "information derived from a user's interactions in an online community" from a source "other than the presented first composite digital display."  Appx2926–28.  And because nothing in the claim, specification, or claim construction explains how such information is derived, this means that the "retrieving user social network information" element could include

(for example) asking a user to identify their own preferences and interests. Asking consumers to identify their preferences is a centuries-old practice used by many industries. *See also* Appx504 ("[Prior art] gets user attribute information by asking the users.").

10Tales likewise conceded during claim construction that the "performing rule based substitution" step was disclosed in the prior art. Appx3241, Appx3250. And it urged a broad construction of "rule based substitution" without asking the court to limit "creating … a user specific composite digital media display" in any way. Appx678–81.

Consistent with 10Tales' arguments, the magistrate judge concluded that "the term 'rule based' refers to a substitution that happens by application of a rule, rather than on the basis of some discretionary or subjective determination." Appx2930–31. 10Tales cannot fault the district court for adopting broad constructions in line with 10Tales' proposals below.

*Second*, 10Tales' rewriting of claim 1 distorts the patent beyond recognition. 10Tales says these two subparts collectively improved prior art by "modify[ing] digital media content" presented to the user. Br. 41. But claim 1 does not describe— at any level of generality—a process to modify digital media content.

To be sure, claim 1 mentions "associating user attributes" with digital assets, "identifying" potentially relevant assets, "creating" two displays of relevant assets,

"presenting" asset displays to users, and "substitut[ing]" out one or more assets in the second display. But none of these vague descriptions amounts to *modifying* digital media content. Instead, the steps that 10Tales selects for special treatment are themselves abstract concepts. *See* Appx10 ("Nothing in the claim addresses *how* user attributes are derived from the user's interactions in an online community or *how* those attributes are used to determine the user's affinity for content."); *Free Stream Media*, 996 F.3d at 1363–65 (finding claims using similar verbs and nouns as directed to an abstract idea); *see also ChargePoint*, 920 F.3d at 769 ("Even a specification full of technical details … may nonetheless conclude with claims that claim nothing more than [an] abstract idea.").

*2. Extraneous Evidence*. 10Tales also tries to use the specification and other extraneous sources to rewrite claim 1.

10Tales makes much of the specification's mention of the system's purported ability to "personaliz[e] content based on a combination of a user's demographics, psychodemographics, cognitive states, emotional states, social placement and group interaction dynamics within an online community," and other kinds of information. *See, e.g.*, Br. 5–7. In fact, the "Summary of the Invention" confirms that the patent "present[s]" a "method, system and software … for customizing and *personalizing content*." Appx50 (2:65–66). But the patent's alleged instruction to combine each user's demographic, cognitive, and other categories of information is found nowhere

in the claims. *See* Appx50–51. 10Tales cannot identify any specific rules or methods by which the claim determines or uses "user social network information" to customize content. And this Court has long held that merely "recit[ing] concrete, tangible components"—here, the patent's purported ability to consider user social network information—will not be enough to "escape[] the reach" of *Alice* step one. *In re TLI*, 823 F.3d at 611.

10Tales also tries to twist TikTok's expert's testimony, provided in claim construction to support arguments that the claim is indefinite, to argue the claimed concepts were "new" at the time. That is not what Dr. Bovik was saying. He explained that the terms the patent uses were so unclear and abstract that the specification does not reveal how to perform the claim—and a person of skill's background knowledge would not fill the gap. Appx1472–88. For example, Dr. Bovik mentioned the "infancy" of social networks to support his broader point that "the scope of what is meant by 'user social network information' is unknown and therefore indefinite." Appx1472. In other words, Dr. Bovik says that the novelty of social networks explains the '030 patent's inability to meaningfully describe "how to derive user attributes from retrieved social network." *Id.* But even if 10Tales gets away with misconstruing Dr. Bovik's testimony, 10Tales merely cites this testimony for the proposition that online social networks were novel at the time of the '030 patent. And as explained below, novelty does not demonstrate eligibility.

Nor did Dr. Bovik say that claim 1's "performing a rule based substitution" language is a "complex task." Appx1495. Instead, Dr. Bovik said that claim 1 is "indefinite" because neither it nor the specification "provide any guidance as to how to perform a 'rule based substitution.'" Appx1494. The only thing that Dr. Bovik says is "complex" is a purely *hypothetical* algorithm for "manipulat[ing] digital media assets" in "real time"—which the specification did not describe. Appx1495. And because claim 1 did not even come close to reciting such a complex task, Dr. Bovik said that claim 1 does not specify a process for modifying content in real time. *Id.* Thus, the testimony on which 10Tales now relies hurts rather than helps 10Tales.

Regardless, even if the inventor conceived of the abstract ideas of retrieving information from a user's interactions in an online community or performing a novel rule based substitution, such ideas were nothing more than aspirational concepts— not improvements to technology. This is especially true given that none of the concepts on which 10Tales relies can be found in claim 1 itself. Instead, they are based on 10Tales' shaky *interpretation* of the specification and extrinsic evidence, which makes sense given that the specification never actually described these concepts as improvements over prior art. Regardless, 10Tales' interpretation of those sources "must always yield to the claim language." *ChargePoint*, 920 F.3d at 766. So none of this evidence saves the '030 patent.

*3. Targeted Advertising*.   Instead of engaging with the plethora of cases in which this Court recognized that personalizing digital content is an abstract idea, 10Tales asks this Court to distinguish this body of precedent as limited to the narrow context of "targeted advertising."

10Tales is simply incorrect in distinguishing the precedent as targeted advertising cases, as many of the cases relied on by TikTok and the district court are *not* limited to only targeted advertising.  *See, e.g.*, *Broadband iTV*, 113 F.4th at 1371 (personalized content); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363–64 (Fed. Cir. 2023) (match-based questioning); *Affinity Labs*, 838 F.3d at 1268–71 (personalized user interface); *MyMail, Ltd. v. ooVoo, LLC*, Nos. 2020-1825, 2020–1826, 2021 WL 3671364, at *5 (Fed. Cir. Aug. 19, 2021) (personalized user tool bar); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (personalized content); *Free Stream Media*, 996 F.3d at 1361–65 (personalized content); *Capital One*, 792 F.3d at 1369–70 (personalized web page content).   These cases do not turn on the particular form of content (advertising); they turn on the fact that "tailoring information based on provided information" is "an abstract, overly broad concept long-practiced in our society."  *Capital One*, 792 F.3d at 1730; *Bridge & Post*, 778 F. App'x at 887.  Likewise, 10Tales' asserted claim "is ineligible" because it "fails to recite a practical way of applying an underlying idea and instead is drafted in such a result-oriented way that it amounts to

43

encompassing the principle in the abstract no matter how implemented." *Free Stream Media*, 996 F.3d at 1363 (cleaned up).

And in any event, 10Tales' patent is *broader* than targeted advertising, and therefore would not meet the Section 101 standard even if all these cases were limited to targeted advertising. *See* Br. 28 (conceding this point). By 10Tales' own telling, claim 1 covers targeted advertising *and* other means of "presenting personalized digital media content to a user." Br. 27. This concession is critical. If the more specific and therefore less abstract concept of targeted advertising fails *Alice* step one, then the broader concept of "personalized content" is even *more* abstract and obviously within the scope of the precedents 10Tales tries to write off.

*4. "The Human Mind."* Finally, 10Tales argues that because claim 1 is performed on a computer, it cannot be performed in the human mind and thus lacks "a telltale sign of abstraction." Br. 27, 38. This argument both confuses necessary and sufficient conditions and commits the reverse-causality fallacy.

Although claims performed in the human mind are abstract, the opposite is not true. A claim is not concrete merely because it uses a computer. *Miller Mendel, Inc. v. City of Anna, Texas*, 107 F.4th 1345, 1353 (Fed. Cir. 2024) ("[T]he inability for the human mind to perform each claim step does not alone confer patentability."). After all, this Court routinely finds personalized-content claims that use computers as directed to abstract ideas. *See*, *e.g.*, *Trinity*, 72 F.4th at 1361–64; *Broadband iTV*,

113 F.4th at 1371. And there are plenty of abstract ideas that cannot be performed in the human mind. *See, e.g.*, *O'Reilly v. Morse*, 56 U.S. 62, 135 (1853) (holding that the idea of using electro-magnetism to print characters at a distance was abstract, something that almost certainly could not be performed in the human mind).

In any event, just as "determining content to recommend based on user consumption history can be performed in the human mind or using a pencil and paper" (*Broadband iTV*, 113 F.4th at 1371), determining content to recommend based on user social network information about the user can likewise be performed in the human mind or using a pencil and paper (e.g., pushing dog-food advertisements and puppy videos to dog owners). Pre-internet companies would personalize content based on what they knew about their customers—just less efficiently than the internet has enabled. *See Bridge & Post*, 778 F. App'x at 887 (targeted advertising "is a 'fundamental practice' that dates back to newspaper advertisements").

## III. The Claim Has No Inventive Concept, Just the Instruction to Implement the Abstract Idea on a Computer

The asserted claim fares no better at *Alice* step two. Neither the claim's components nor its functions do anything more than implement the abstract idea of presenting personalized content to a user based on information about the user. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1341 (Fed. Cir. 2017) (recognizing that claims are patent ineligible when they require only

"conventional computer and network components operating according to their ordinary functions").

### A. The Claim Recites Only Conventional Computer Processing, with No Inventive Elements.

To transform an abstract concept into a patent-eligible invention, the claim must contain "a specific, discrete implementation of the abstract idea" and provide a "particular arrangement of elements [that] is a technical improvement over the prior art." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 534 (Fed. Cir. 2020) (alteration and citation omitted); *ChargePoint*, 920 F.3d at 772–73. And "an inventive concept must be evident *in the claims*." *RecogniCorp LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added). For this reason, claims that merely require the "performance of well-understood, routine, and conventional activities previously known to the industry" will fail at *Alice* step two. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (alteration and quotation marks omitted); *Alice*, 573 U.S. at 221.

Moreover, because "[a] claim for a new abstract idea is still an abstract idea," it is not enough for a claim to merely advance new technology. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). After all, "[i]t has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech*, 899 F.3d at 1290.

Claim 1 recites only conventional technology—servers and computer storage—which were widely used to provide personalized digital media content to users at the time of the '030 patent. 10Tales admits as much. *See* Br. 5. And that admission is fatal, because using conventional computing to implement the abstract idea is not an inventive concept. *See*, *e.g.*, *Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (holding that the claims lacked an inventive concept because they "'add[ed]' only generic computer components such as a[] … 'database,'" which did "not satisfy the inventive concept requirement"); *Intell. Ventures I v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (holding that the claims lacked an inventive concept because they "recite[d] both a generic computer element—a processor—and a series of generic computer 'components' that merely restate their individual functions"). As the Supreme Court put it in *Alice*, "[c]onventional steps, specified at a high level of generality," are "not enough to supply an inventive concept." 573 U.S. at 222; *Free Stream Media*, 996 F.3d at 1366 (same).

All told, claim 1 describes a "system" consisting of "one or more programming instructions" for: (1) presenting an initial set of digital media assets to a user, (2) retrieving user social network information and attributes, (3) selecting a second set of assets based on such information and attributes, and (4) substituting one or more of the initial set of assets for the second set once some kind of

"personalization opportunity" arises.  Claim 1 does not specify how the system retrieves user social network information, how the user attributes contained therein are derived, or how the system identifies, selects, presents, or substitutes digital assets.  If described at all, the specification provides only conventional, generic computer instructions for performing these steps.

This oversight is critical because "nonspecific" functions "lack[ing in] technical detail" fail as a matter of law to provide an inventive concept.  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017).  To be sure, claim 1 recites the *goal* of making content more personally relevant, but "You should achieve this result using rules" is not an inventive concept.  *In re Bd. of Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1250 (Fed. Cir. 2021) ("Courts have long held that mathematical algorithms for performing calculations, without more, are patent ineligible under § 101.").  To hold otherwise would mean that all patents that take place in the "particular technological environment" of a computer escape eligibility review—because computers operate by rules (programs).  *Alice*, 573 U.S. at 223.

As this Court has repeatedly recognized, matching users with potentially relevant content is a well-understood, routine, and conventional function.  *See*, *e.g.*, *Secured Mail*, 873 F.3d at 912; *Bridge & Post*, 778 F. App'x at 888–89.  The verbs that claim 1 uses to describe the content-personalizing process—i.e., "identify"

"present," "retrieve," etc.—cannot rise to the level of inventive concepts without some "identification in the claims" as to each verb's "specific, unconventional encoding, decoding, compression, or broadcasting techniques." *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 904 (Fed. Cir. 2020).

10Tales cannot bootstrap the purportedly novel information that claim 1 uses to personalize content—i.e., "user social network information"—to save the patent either. After all, such "[i]nformation … is" both "intangible" and "abstract." *SAP*, 898 F.3d at 1167.

Neither does the claim (or specification) describe "*how* user attributes are derived from the user's interactions in an online community or *how* those attributes are used to determine the user's affinity for content." Appx10. And even if it did, there is nothing inventive about using social network information to carry out the commonplace process and abstract idea of personalizing content for users. That information source may be a new technological environment for the abstract idea (versus, for example, considering *newspaper readership data* to personalize *newspaper* advertisements), but it does not transform that abstract idea into an inventive concept. *Synopsys*, 839 F.3d at 1151 ("[a] claim for a new abstract idea is still an abstract idea."). Therefore, claim 1 does not survive *Alice* step 2.

### B.    10Tales' Reading of the Claim Fails.

Tellingly, 10Tales does not meaningfully engage with the text of claim 1 at *Alice* step two—and for good reason.  Claim 1's abstract and nonspecific language is not conducive to 10Tales' arguments.

*1. Novelty.*  10Tales argues the district court erred at *Alice* step two because the "systems described in the closest prior art had not envisioned resort to user social network information" or "substituting" assets when personalizing digital media content for a particular user.  Br. 43, 53.  In other words, 10Tales says that claim 1's novelty is highly relevant in determining whether claim 1 is directed to patent eligible subject matter.

That argument has already been rejected by the Supreme Court, which expressly held that "[t]he 'novelty' of any element or steps in a process, or even of the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981) (emphasis added).  And this Court has long held that it is not "enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art."  *SAP*, 898 F.3d at 1163.

10Tales pays lip service to this precedent by acknowledging that "novelty does not equate to eligibility."  Br. 36.  But a few pages later, 10Tales walks back its concession, misconstruing Supreme Court precedent for the proposition that

50

novelty and § 101 eligibility "sometimes overlap." *Id.* at 49 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 90 (2012)). *Mayo* does not support 10Tales here; *Mayo* was actually *criticizing* the notion that these provisions are coextensive, going as far to say that such conflation "risks creating significantly greater legal uncertainty" than the properly rigid separation between the two. *Mayo*, 566 U.S. at 90.

Even if 10Tales were right about these two inquiries *sometimes* overlap, such overlap would not mean that claim 1 contains an inventive concept here. To see how, consider the venerable case of *Morse*, 56 U.S. 62. The undisputed novelty of Samuel F. B. Morse's telegraph had no bearing on the question whether Morse could patent the abstract idea of using electromagnetism to print characters at a distance (even if he was the first to use electromagnetism to do so). *Id.* at 135. So too here. It is well settled that "[a] claim for a new abstract idea is still an abstract idea." *Synopsys*, 839 F.3d at 1151. And as the following subsection shows, "retrieving user social network information" and "substituting" are themselves abstract concepts rather than specific inventive elements, so their novelty is immaterial.

**2. Specificity.** 10Tales fails to identify anything in claim 1 that is sufficiently specific to establish an inventive concept.

For starters, the term "retrieving user social network information" is a "nonspecific" term that lacks sufficient "technical detail" to constitute an inventive

concept.  *Secured Mail*, 873 F.3d at 912.  As construed, the source of a user's social

network information is *anything* "other than the presented first composite display,"

which is "derived from a user's interactions in an online community."  Appx2923–

28.

The term was never mentioned in the specification; instead, it was added as

an afterthought to overcome prior art more than five years after the application was

filed.  Appx825–30.  It was thus not even important enough to mention in the

application.  Nor did 10Tales ask for a more specific construction of the "source" of

information and therefore forfeited any alternative definitions.  *See* Appx676–77;

*Forest Laboratories*, 918 F.3d at 933 & n.1.  Even if 10Tales had requested a more

specific construction, such a construction is not supported by claim nor the

specification.  The claim uses very broad language and 10Tales is stuck with the

broad construction.

As construed, there is nothing in the claim addressing how user social network

information is retrieved, much less used to make content more "relevant."  On the

contrary, the specification refers to the generic "retrieval" of user information (but

never mentions "user social network information") as something that "already

available computers [e.g., the server 590], with their already available basic

functions [C, C++, Perl, Lisp, Java], [could] use."  Appx57 (15:53–55); *see SAP*,

898 F.3d at 1170–71.  Putting these two concepts together, this means that

"retrieving user social network information" amounts to nothing but a conventional means of accessing an imprecise bucket of information, which is a far cry from the "impactful modification" that 10Tales reads into claim 1.

The "performing a rule based substitution" claim limitation is equally nonspecific and likewise was never mentioned in the specification, but instead was added only to overcome prior art.  Appx825–30.  At claim construction, the district court observed that this element refers to only "a substitution that happens by application of *a rule*, rather than on the basis of some discretionary or subjective determination."   Appx2930–31 (emphasis added).   10Tales did not ask for a construction of this element that limited the definition to a specific type of modification or substitution, and therefore forfeited any alternative definitions, and indeed conceded that this limitation was covered by the prior art.  *See* Appx9–10; Appx676–77; Appx3241, Appx3250; *Forest Laboratories*, 918 F.3d at 933 & n.1. As a result, it is stuck with this nonspecific construction as well.

These elements of claim 1 merely apply the abstract idea of substituting digital assets and gathering information to the "technological environment" of an online community.   *Alice*, 573 U.S. at 223.   But if "personalizing content based on information you have about the user" is abstract—as TikTok has shown that it is— then 10Tales cannot cut that abstract idea into its slices (e.g., distinct claims for personalizing content based on *social network* information, based on *location*

information, based on *browsing* information) to manufacture an inventive concept. There is nothing inventive about using *social network* information—rather than any other source—to carry out the commonplace process and abstract idea of personalizing content for users, even if that was a relatively new source of information at the time. *See Synopsys*, 839 F.3d at 1151.

Unable to identify sufficiently specific language supporting an inventive concept in the claim, 10Tales argues that the district court was bound to accept its conclusory assertion that the specification described several advantages of the claimed concept. *See* Br. 32. But while the district court, when considering a Rule 12(c) motion, must indeed "take all the *factual* allegations in the complaint as true," it is not "bound to accept as true a *legal* conclusion couched as a factual allegation." *Dropbox, Inc.*, 815 F. App'x at 538 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (emphasis added); *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498–99 (Fed. Cir. 2020) ("conclusory statements" about patent eligibility "d[o] not preclude dismissal"). 10Tales' claim "about inventiveness, wholly divorced from the claim[]" cannot defeat TikTok's Rule 12(c) motion; only "plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). And here the specification simply recites an aspiration to create more impactful content, but does

not provide the technical details for achieving the goal. That aspiration cannot transmogrify an abstract idea into an inventive concept.

**3. *Extraneous Evidence.*** Even if the elements "retrieving user social network information" and "performing a rule based substitution" were not abstract terms in and of themselves, they contain nothing inventive. The *only* evidence that 10Tales gives to define these elements comes from extraneous sources, namely: the specification and statements from the patent examiner, the PTAB, and an expert witness. Br. 43–53. But manufacturing an inventive concept from sources outside the asserted claim is improper. While extraneous evidence "may help illuminate the true focus of a claim, when analyzing patent eligibility," reliance on extraneous evidence "must always yield to the claim language." *ChargePoint*, 920 F.3d at 766.

Regardless, 10Tales' extraneous evidence does not say what 10Tales alleges it does. As explained above, Dr. Bovik's testimony underscores that even if the inventor conceived of these ideas, such ideas were not described with sufficient technical detail to transform an abstract idea into patent eligible subject matter. And while the claim recites a quest to select content based on user social network information, neither the claim nor the specification explain *how* the patent achieves that goal—or how it is any different than in the prior art. All the examiner and the PTAB concluded was that claim 1 had some distinction from prior art references— but they did so based on *narrow* claim constructions for which 10Tales never argued,

and which the district court never adopted. *See* Appx674–77; Appx904. What's more, the PTO eventually granted *ex parte* reexamination, so 10Tales cannot claim that the Patent Office remains convinced the claim is even novel. *See* Defendants-Appellees' Motion For Judicial Notice filed concurrently herewith.

*4. Inapposite Caselaw.* 10Tales retreats to this Court's decisions in *BASCOM* and *Weisner*, which describe the conditions under which a combination of conventional features constitute an inventive concept. Neither decision applies here.

In *BASCOM*, this Court held that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). There, the combination was unconventional and specific: The claim in *BASCOM* combined "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Id.* The claim did not "merely recite the abstract idea of filtering content" or combine "generic computer components" in a novel way. *Id.* Instead, it "recite[d] a specific, discrete," and "particular arrangement of elements," which solved the problem of "inflexible" remote filtering schemes by enabling individualized filtering at the ISP server. *Id.* at 1350–51. "In other words, the patent in *BASCOM* did not purport to improve the Internet itself by introducing prior art filtering technology to

the Internet. Rather, the *BASCOM* patent fixed a problem presented by combining the two." *Symantec*, 838 F.3d at 1321.

10Tales' patent, by contrast, does not recite any specific, discrete, or particular elements, much less a specific way of arranging those elements. Instead, it describes a list of functions that are just as abstract and commonplace as the patent's overall goal of personalizing content for users of digital media. And unlike the claims in *BASCOM* that permitted customizable filtering at a specific location to fix a particular problem in the industry, 827 F.3d at 1350, claim 1 mirrors the manual process of a newspaper whose "inserts" are "tailored based on information known about the customer," *Capital One*, 792 F.3d at 1369, which amounts to a nontechnical solution to a nontechnical problem of finding out more about a customer.

Of course, "[p]roviding this minimal tailoring"—e.g., providing different newspaper inserts based upon the location of the individual—"does nothing more than implement an abstract idea." *Id.* And the same is true here. It may well be the case that claim 1's use of social network information implements the abstract idea of personalizing content more efficiently than prior art. But this Court has repeatedly recognized that "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept." *Id.* at 1367 (cleaned up). Therefore, *BASCOM* does not help 10Tales.

In *Weisner*, this Court held that the process at issue was "more than just the concept of improving a web search using location history—[but] a specific implementation of that concept." *Weisner v. Google LLC*, 51 F.4th 1073, 1086 (Fed. Cir. 2022). The patent identified an "internet-centric" problem: "web searches … returning voluminous, generic, non-personalized search results." *Id.* at 1087. And the specification and claims identified a new and specific technical solution to the internet-centric problem: improving the method of searching the internet using digital histories and the use of a "reference individual." *Id.* In other words, it provided a new way to use and return search results on the internet. *Id.*

Here, 10Tales cannot articulate how the combination of functions in claim 1 improves the way in which a computer or the internet functions—as neither claim 1 nor the specification explains why this particular combination of functions was inventive. To do that, 10Tales would have to be able to explain the specific *way* claim 1 achieves its desired result of making content more personally relevant, which it cannot do. Claim 1 has no inventive concept beyond merely implementing the abstract idea of personalizing content.

## CONCLUSION

This Court should affirm the judgment.

Dated: January 2, 2025     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        _____
              */s/ Stephen S. Korniczky*
              STEPHEN S. KORNICZKY
              *Attorneys for Defendants-Appellees*
              TIKTOK INC., TIKTOK PTE. LTD.,
              BYTEDANCE LTD., and BYTEDANCE INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of January, 2025, I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served through the appellate CM/ECF system.

Dated: January 2, 2025        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        _____
                    */s/ Stephen S. Korniczky*
          STEPHEN S. KORNICZKY
          *Attorneys for Defendants-Appellees*
          TIKTOK INC., TIKTOK PTE. LTD.,
          BYTEDANCE LTD., and BYTEDANCE INC.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This principal brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(C).   According to Microsoft Word, the brief contains 10,560 words, excluding parts of the motion exempted by Federal Rules of Appellate Procedure 32(f).

This principal brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).   This brief has been prepared using a plain style, 14-point, Times New Roman font, which is a proportionally spaced typeface.

Dated: January 2, 2025        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By       _/s/ Stephen S. Korniczky_
         STEPHEN S. KORNICZKY
         *Attorneys for Defendants-Appellees*
         TIKTOK INC., TIKTOK PTE. LTD.,
         BYTEDANCE LTD., and BYTEDANCE INC.